**Bill DIPPEL, Appellant,**

**v.**

**Grace HUNT, Appellee.**

**No. 46101.**

Court of Appeals of Oklahoma,
Division No. 2.

Nov. 6, 1973.

As Corrected Nov. 27, 1973.

Released for Publication by Order of the
Court of Appeals.

Dec. 6, 1973.

Donley & McMillin, Weatherford, for appellant.

Ivester, Ivester & Ivester, Sayre, for appellee.

BRIGHTMIRE, Presiding Judge.

Upon discovering plaintiff's own insurance company had paid him for his burned up car, the trial court vacated a jury verdict awarding plaintiff the value of the car on the ground his insurance company, not he, was the "real party in interest"—the only person or entity who could prosecute the action. Plaintiff challenges the legality of the ruling.

On a clear, crisp December day in 1970 defendant, Grace Hunt, set out to burn weeds and thistles inhabiting the wide, shallow, gently sloping highway right-of-way or bar ditch which adjoined her farmland along a stretch of several hundred feet.

Billows of off-white smoke arose and drifted northward across the road. Plaintiff says he saw the blinding veil but the presence of a bridge not far ahead caused him to think that the smoke emanated therefrom for a short distance. This thought proved to be in error and upon driving into the smoky area he found no early end to it as he expected. So dense was the smoke it obscured the blacktop road causing plaintiff to let his car go onto the sodded shoulder where flames from the still burning grass leaped up high

enough to set it afire. Defendant, who was not far away, saw Bill Dippel's car afire and said, "Bill, you are on fire, get out." And he did.

The following March this suit was filed blaming loss of the $2,250 car and its $200 worth of contents on defendant's negligence. On its face plaintiff's petition discloses naught but that he is the real party in interest. Only a general demurrer attacking the sufficiency of the facts alleged to support a judgment in plaintiff's favor was filed before answer. On the same day the demurrer was filed—May 7, 1971—an answer and cross-petition were also filed. The answer was short enough—merely a general denial. The cross-petition alleged that plaintiff made untrue allegations in his petition in that he "knew or should have known . . . Defendant did nothing to do any damage to the Plaintiff . . . and the cause of action was filed maliciously with the purpose of intimidating the Defendant . . . ." Plaintiff's demurrer to the cross-petition was sustained pursuant to stipulation of the parties shortly thereafter. Later, on January 3, 1972, defendant filed an "Amended Answer" which contained no general denial but elaborated on certain specific denials and blamed the whole thing on plaintiff's "negligent acts and attitude . . . in driving off the highway . . . ."

Trial took place February 7, 1972. The jury returned a verdict for plaintiff for $2,175 based on an instruction that the only two "elements of possible damages" were: (1) to plaintiff's car "which is agreed to be the sum of $2175.00"; and (2) the "fair cash market value of personal property in car which was destroyed, but not to exceed $50.00."

During the trial plaintiff was taken into the judge's chambers where defendant's attorney was permitted to examine him "to establish the fact that his insurance carrier paid him for the damage to his car and the contents, and that he . . . signed a subrogation agreement with the insurance company that if a recovery was made that

they would get the money . . . [and] if this be true that this subrogation claim is not assignable and therefore Bill [Dippel] doesn't have interest in the suit." In his brief testimony plaintiff swore he lost his car on which he "had insurance" but that the carrier had not paid him anything and he had not signed a subrogation claim.

Evidently the court treated defense counsel's earlier statement as an "objection" which he overruled. At the close of plaintiff's case defendant dictated into the record that he "renews all objections of record heretofore made concerning this matter, and in addition thereto demurs to the evidence . . . because . . . it is wholly insufficient . . . to justify . . . a verdict in favor of the plaintiff . . ." and further moved the court to direct a verdict for defendant. The court thereupon overruled "each of the Motions previously made . . . the demurrer . . . and motion for directed verdict . . . ."

At the close of all evidence defendant attacked only the sufficiency of the evidence to support a finding of negligence by renewing her "demurrer." The court treated it as a motion for a directed verdict and overruled it.

Following this defendant filed an unverified motion for a new trial on February 14, 1972. Of the nine numerical paragraphs of "causes" for vacating the verdict, seven were various forms of assailing the sufficiency of the evidence to support the cause of action, one said plaintiff was conclusively shown to have assumed the risk, and the ninth complained of an instruction.

On February 28, 1972, an "affidavit" purporting to have been executed by plaintiff was filed. It recited that the statements he previously made to the court "were erroneous" and that he "was paid the sum of $2250.00" by Farm Bureau Insurance Company under the comprehensive provision of a policy he carried with it, but he had not been paid anything for the lost personal items in the car when it was destroyed.

On February 29, 1972, defendant filed an instrument entitled "Amendment to Motion to New Trial." Therein she alleged that "her pleadings raised the question, who the parties in interest were in this lawsuit, alleging or stating to the Court, that the insurance company had paid the claim to the plaintiff herein, and the insurance company was a real party at [sic] interest . . . pleadings . . ." which the court overruled. Next, defendant mentioned plaintiff's trial testimony about not having been paid for any of his loss and the affidavit apparently contradicting it. In conclusion defendant said she "believes that she can prove that the testimony given . . . [at trial regarding receipt of money from his insurance company] . . . is not true and . . . this conduct . . . is entitled to be considered as a test of creditability to the plaintiff's testimony . . . and should be" considered by the court in passing on defendant's new trial motion.

The court heard the motion on October 16, 1972, and "sustained" it "by reason of the fact that the court finds that the real party in interest is Farm Bureau Insurance Company and that the proposition set forth in defendant's motion for a new trial is true and the action is required to proceed further in the name of the real party in interest, Farm Bureau Insurance Company."

Plaintiff advances two general propositions of error: (1) the verdict is sustained by sufficient evidence; and (2) the court erred in sustaining defendant's motion for new trial. The first, if not irrelevant, is but a subtopic of the second. Indeed, defendant's response ignores it and argues a single theme: a new trial is warranted because plaintiff was not the real party interested in the outcome of the action, thus had no standing to prosecute it.

In going through the record it seems to us two important questions present themselves: (1) Does the record support the conclusion that plaintiff was not the real

party in interest? (2) Did defendant protect her right to raise the issue by timely objecting?

 Both questions must be answered in the negative. That an objection to plaintiff's lack of legal interest in a lawsuit must be timely and properly raised else it is waived was settled long ago. See syllabus 2 in J. E. Crosbie, Inc. v. Fisher, 188 Okl. 415, 109 P.2d 1075 (1941) citing Shick v. Enid Clinic, 184 Okl. 484, 88 P.2d 329 (1939). The objection must be raised by specifying it as a ground of a demurrer if a basis for it is disclosed in the petition—otherwise it must be asserted in the answer if the ground be known. Here, although defendant suggests in her amendment to the new trial motion she knew during the pretrial pleading stage of the proceedings that the insurance company paid plaintiff for the car loss, the record contains no evidence that the objection was raised by demurrer or answer.

Moreover, we are convinced that an analysis of various Oklahoma Supreme Court decisions relevant to the status of plaintiff's interest in the lawsuit defeats the contention that plaintiff was not a real party in interest as contemplated by the terms of 12 O.S.1971 § 221.[1]

 Quite aside from the question of whether plaintiff had been paid by his own insurance carrier for any or all of his destroyed personal property, the destruction was found by the jury to have resulted from defendant's tortfeasance. Shortly after Oklahoma became a state its supreme court construed the language of § 221 (then § 26 of the Code) as being a statutory recognition of the common law prohibition against the assignment of a tort action. Kansas City, M. & O. Ry. v. Shutt, 24 Okl. 96, 104 P. 51 (1909). This prohibition obtains unless otherwise provided by statute. Harrington v. Central States Fire Ins. Co., 169 Okl. 255, 36 P.2d 738, 96 A. L.R. 859 (1934). In Harrington an exception to the general provisions of § 221 was found to exist under the terms of § 10557, O.S.1931 which precisely prescribed a form of fire policy containing a provision for a subrogational assignment of the insured's actionable cause against a tortfeasing third party. The statutory insurance policy not only furnishes a basis for escaping the assignment proscription of § 221 but it also defines the scope of the exception—namely, it does not exceed the specific statutory grant. The Harrington dogma was reapplied in Great American Ins. Co. v. Watts, Okl., 393 P.2d 236 (1964)—a case, incidentally, which also reaffirmed the holding in McMahan v. McCafferty, 205 Okl. 656, 240 P.2d 443 (1952) to the effect that even where the Harrington rule of assignability applies the tort action can be brought in the name of *either* the insurance company or insured.

And as an adjunct to the unassignability of plaintiff's claim there is another entrenched precept—called the "collateral source" rule. It is put this way in Porter v. Manes, Okl., 347 P.2d 210 (1959):

"If reimbursement had been made to plaintiff, [apparently by his own automobile collision carrier] as contained in the proffered proof of defendant, from a collateral source, wholly independent of and not in behalf of defendant, this reimbursement could not inure to the benefit of defendant, nor lessen the damage recoverable from him and evidence of the reimbursement is inadmissible. Denco Bus Lines v. Hargis, 204 Okl. 339, 229 P.2d 560; Huey v. Stephens, Okl., 275 P.2d 254."

The same result was reached in L. E. Richardson v. Shaw, Okl., 313 P.2d 520 (1957) where plaintiff's own insurance company had paid him for his car damage caused by the defending tortfeasor.

The one case cited by defendant which seems to extend the Harrington exception to a non-fire insurance policy is Great

1. "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in this article but this section shall not be deemed to authorize the assignment of a thing in action, not arising out of contract."

Western Motor Lines, Inc. v. Cozard, Okl., 417 P.2d 575 (1966). This case ignored the nonassignment feature of § 221 and founded a conclusion on McMahan that the fully reimbursed plaintiff was "not the real party in interest," apparently overlooking the fact that the latter case involved a loss under a statutory fire insurance policy, hence amenable to the Harrington doctrine which it did apply. Moreover Cozard merely declined to denounce an intra-trial substitution of parties plaintiff based on the permissive provisions of 12 O.S.1971 § 235—a substitution acquiesced in by both the old and new plaintiffs. So, at least for these reasons, Cozard is without controlling effect on the case at bar. If one were to read a more inclusive rationale into Cozard, however, the case to that extent would have to be considered as sterile flotsam sluffed to the side of a bifurcated stream of cases one branch of which applies the Harrington fire policy exception, while the other enforces the anti-assignment part of § 221 in non-fire policy (that is a nonstatutorily standard one) cases under the "collateral source" rule exemplified by Porter v. Manes, supra, i. e., State Farm Fire & Cas. Ins. Co. v. Farmers Ins. Exch., Okl., 489 P.2d 480 (1971); Hardware Dealers Mut. Fire Ins. Co. v. Krueger, Okl., 486 P.2d 737 (1971); Oklahoma Farm Bureau Mut. Ins. Co. v. Ingle, Okl., 494 P.2d 320 (1972), holding a medical pay subrogation agreement unenforceably void as between an insurer and a third party.[2] We know not whether plaintiff's automobile policy contains a subrogation clause comparable to the one dealt with in the Ingle case. If it

does then it is surely doomed to the same fatal fate suffered by the one in Ingle— that is a declaration of invalidity because it transgresses both common law and § 221 proscriptions against assigning actionable tort causes.

Actually when the smoke of controversy clears away much can be said for the notion that it is really none of the tortfeasor's concern what rights might exist between the tortfeasor's victim and the latter's own insurance carrier, save to avoid subjection to more than one judgment—an event not possible under existing decisional law.

▣ We hold that the rationale of Ingle and Krueger relating to medical pay coverage is applicable to the comprehensive coverage contained in plaintiff's automobile liability insurance policy here—that is, an insurer paying its insured for a loss under the comprehensive provisions of an automobile insurance policy may not, under subrogation principles, recover the amount paid from the loss-causing tortfeasor, hence, could not be a real party in interest. 12 O.S.1971 § 221.

Our examination of the record discloses no error warranting the granting of a new trial to defendant. The order granting one is therefore vacated and the cause is remanded to the trial court with directions to reinstate judgment for plaintiff in accordance with the verdict of the jury.

BACON and NEPTUNE, JJ., concur.

---

2. However, as between an insured and his insurer the former may be estopped to assert non-assignability of the tort action under certain circumstances. Blocker v. National Dis-

count Ins. Co., Okl., 493 P.2d 825 (1972) and State Farm Fire & Cas. Ins. Co. v. Farmers Ins. Exch., supra.